**MANFRED, APC**
Manfred P. Muecke (SBN: 222893)
mmuecke@manfredapc.com
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 550-4005
Fax: (619) 550-4006

**Law Offices of Lauren Chaikin**
Lauren N. Chaikin (SBN: 297105)
lauren@chaikinlegal.com
4275 Executive Square, Suite 200
La Jolla, CA 92037
Telephone: (858) 366-7768
Fax: (858) 300-5261

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| KRISTA RAILEY, individually, and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>PENTAGON FEDERAL CREDIT UNION,<br><br>     Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Upon information and belief, Plaintiff Krista Railey ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant PenFed, N.A., ("PenFed" or "Defendant").

## INTRODUCTION

1. Until recently, a low-interest rate environment was pervasive in the home and personal mortgage market. As such, mortgage products offered by numerous institutions, including PenFed, presented what were akin to once-in-a-lifetime opportunities for borrowers such as Plaintiff to purchase or refinance residential real estate at historically low-interest rates.

2. As one of the largest credit unions on a nationwide basis with well over three thousand employees, PenFed incentivized its employees to utilize PenFed's mortgage and refinancing products and services by offering to its employees, including Plaintiff, a percentage discount off of its prevailing mortgage finance rate ("preferred rate mortgage").

3. PenFed's preferred rate mortgage offered to Plaintiff and other employee-borrowers was presented as a fixed rate type mortgage in its initial good faith Loan Estimate (Exhibit A) and Closing Disclosure (Exhibit B) forms.

4. However, the preferred rate mortgage would only be in effect while PenFed employed the PenFed employee-borrower. If the PenFed employee borrower was terminated from employment by PenFed, the preferred rate mortgage would convert to a standard mortgage rate with the percentage discount removed resulting in an increased interest rate and applicable monthly mortgage payment.

5. Defendant's sole disclosure of this condition underlying the preferred rate transaction was the insertion of an "Employee Addendum/Rider" to the preferred rate transaction at the time of closing. Exhibit C.

6. Mortgage financial products that are considered variable rate transactions, including PenFed's preferred rate mortgage offered to its employees,

PAGE | 1

are required to disclose to borrowers, among other items, applicable interest rates, including any discounts, notices of interest rate adjustments, and the timeline for repayment, so that borrowers are fully informed of the costs and conditions of a mortgage.

7. Defendant's mortgage products are strictly regulated by federal disclosure requirements under the Truth-In-Lending-Act ("TILA"), implemented by Regulation Z. 12 C.F.R. §1026.1 *et seq*.

8. The Consumer Financial Protection Bureau has opined that preferred rate mortgage products offered to a creditor's employees are considered variable rate mortgage products if the offered rate is contingent upon continued employment with the creditor employer.[1]

9. PenFed Loan Estimate and Closing Disclosures ("Loan Disclosure Documents") are presumptive form documents issued at the outset of a mortgage transaction and a few days prior to the closing of a mortgage financing transaction. The Loan Disclosure Documents are presumptively structured to be consistent with and abide by the disclosure requirements of TILA.

10. Among other terms, the PenFed Loan Disclosure Documents set forth the loan amount, interest rate, loan term, purpose of the loan, whether a fixed or variable loan product is presented, and loan type. Exhibits A, B.

11. Under TILA, PenFed is statutorily required to disclose through its Loan Disclosure Documents to its preferred rate employee borrowers, among other items, whether its mortgage loans are variable, what conditions would trigger a change to the applicable interest rate, and amount of time required for notice of a change in rate.

---

[1] *See* Consumer Financial Protection Bureau ("CFPB") Comment for 12 C.F.R. § 1026.19(b)-5i(B) at https://www.consumerfinance.gov/rules-policy/regulations/1026/interp-19/#19-b-Interp-5-i (*last accessed on December 5, 2022*)

PAGE | 2

12. PenFed breached its statutory obligations by failing to disclose that its employee preferred rate mortgage loans are actually variable rate mortgage loans as required under TILA.

13. PenFed's failure to abide by regulations governing required disclosures in mortgage financing agreements under TILA was to the financial detriment of Plaintiff and other PenFed preferred rate employee borrowers.

14. PenFed's statutory violations have left Plaintiff and other Class members subject to higher interest rates and increased monthly mortgage payment on the preferred rate mortgages conditioned on employment with PenFed.

15. Plaintiff brings this action on behalf of herself and a proposed Class of PenFed employees who obtained preferred rate mortgage products and were damaged by PenFed's blatant violations of TILA regulations governing disclosures.

16. Plaintiff additionally brings an individual action alleging PenFed violated the California Unfair Competition Law ("UCL") arising out of its failure to comply with the TILA disclosure requirements concerning its preferred rate mortgage products as described herein.

**JURISDICTION AND VENUE**

17. This Court has original jurisdiction pursuant to 28 U.S.C. §1331. This Court also has subject matter jurisdiction under claims arising pursuant to 15 U.S.C. §1601, *et seq*.

18. Venue is proper in this Court pursuant to 28 U.S.C. §1391 *et seq*. inasmuch Plaintiff resides in this District and because a substantial part of the events giving rise to Plaintiff's claims occurred while she has resided in this judicial district. Venue is also proper in this Court under 18 U.S.C. §1965(a) because Defendant regularly transacts substantial business in this District.

## PARTIES

19. Plaintiff Krista Railey is a resident of Canyon Lake, California and has resided in Riverside County during the relevant time period.

20. Defendant Pentagon Federal Credit Union is a national credit union headquartered in McLean, Virginia. Defendant regularly conducts business in this District, including the marketing and issuance of residential mortgage services and mortgage finance products such as the one issued to Plaintiff.

## FACTUAL ALLEGATIONS

**PenFed Issues Preferred Rate Mortgage Agreements To Its Employees**

21. PenFed offered to Plaintiff and other employees of PenFed a preferred rate mortgage product whereby a discount was applied to the standard mortgage rate that would otherwise have applied but for the borrower's status as an employee of PenFed.

22. The discounted mortgage rate offered by PenFed to its employees would only apply while PenFed actively employed its employee borrowers. Thus, a PenFed employee who had obtained a preferred rate mortgage product through PenFed would stand to lose the applicable discount upon termination of employment with PenFed.

23. As such, what was presented by PenFed as a preferred fixed rate mortgage product was actually a variable preferred mortgage rate product.

24. Although PenFed's preferred rate mortgage product may be considered an employee benefit to its employees, PenFed is still obligated to follow all disclosure requirements promulgated under TILA and Regulation Z to ensure its employee borrowers are made fully aware of the costs and variability of the mortgage product they obtain from PenFed consistent with applicable timeframes before the closing of the mortgage transaction as established in TILA.

**TILA Protects Borrowers Against Unlawful Mortgage Rate Changes**

25. TILA, and its implementing statute, Regulation Z, collectively require lenders to timely disclose critical components of a mortgage product offered to its borrowers. The timing component of TILA ensures borrowers can fully assess and evaluate the total projected costs of the mortgage product prior to the closing of the mortgage transaction.

26. Regulation Z requires specific disclosures for variable-rate mortgage transactions if the applicable annual percentage rate may increase on a mortgage transaction that has a term greater than one year. 12 C.F.R. §1026.19(b)

27. Regulation Z sets forth particular disclosure requirements concerning the variability of the applicable interest rate that must be provided for variable-rate mortgage products presented to borrowers. These disclosure requirements include, but are not limited to, the following pertinent subsections of 12 C.F.R. §1026.19(b)(2) addressing variable-rate mortgages:

(i) The fact that the interest rate, payment, or term of the loan can change.
(vii) Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance, including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.
(xi) The type of information that will be provided in notices of adjustments and the timing of such notices.

28. Regulation Z further requires certain information about the loan be delivered or mailed to the borrower in the form of a good faith estimate within three days of the creditor's receipt of the mortgage loan application. 12 C.F.R. §1026.19(e)(iii), *et seq.*

29. Under 12 C.F.R. §1026.37, the required contents of the good faith estimate presented to the borrower by the creditor include, but are not limited to, a

description of the loan product as an adjustable, step, or fixed rate product [2]; and loan terms disclosing the applicable interest rate at consummation and any adjustments that may be made after consummation.[3]

30. Under 12 C.F.R. § 1026.38, the required contents of the closing disclosures include, but are not limited to, certain disclosures made as part of the good faith estimate, such as the description of the loan product [4] and loan terms expressing the applicable interest rate and any adjustments that may be made after consummation. [5]

31. The Official CFPB Staff Commentary to 12 C.F.R. §1026.19(b), *et seq.* provides a pointed example of how a preferred rate mortgage offered to an employee by an employer creditor is presumptively considered a variable-rate transaction:

> **Examples of Variable-Rate Transactions**
> i. The following transactions, if they have a term greater than one year and are secured by the consumer's principal dwelling, constitute variable-rate transactions subject to the disclosure requirements of § 1026.19(b).
>
> B. Preferred-rate loans where the terms of the legal obligation provide that the initial underlying rate is fixed but will increase upon the occurrence of some event, ***such as an employee leaving the employ of the creditor, and the note reflects the preferred rate***. The disclosures under §§ 1026.19(b)(1) and 1026.19(b)(2)(v), (viii), (ix), and (xii) are not applicable to such loans.
>
> (emphasis added)

---

[2] 12 C.F.R. §1026.37(a)(10)(i)
[3] 12 C.F.R. §1026.37(b)(6)
[4] 12 C.F.R. § 1026.38(a)(5)(iii)
[5] 12 C.F.R. § 1026.38(b)

*See Official Interpretation of* 12 C.F.R. §1026.19(b) Certain Variable Rate Transactions [6]

### PenFed Unlawfully Adjusted The Rate On Plaintiff's Mortgage

32. Plaintiff applied for and subsequently obtained a purchase mortgage from Defendant on or around December 8, 2021. The preferred rate mortgage was issued in the amount of $575,000 and was secured by her primary residence in Canyon Lake, California. *See* Exhibit A.

33. In contrast to the fixed interest rate of 2.75% mortgage consistently presented and disclosed in the PenFed Loan Disclosure Documents, Defendant inserted a supplemental addendum on the December 8, 2021 closing date of Plaintiff's mortgage transaction notifying Plaintiff that her preferred rate mortgage was contingent upon continued employment with PenFed. In its notice, Defendant disclosed an "Employee Rate Discount" applied to Plaintiff's mortgage rate as follows:

> EMPLOYEE RATE DISCOUNT
>
> I/we acknowledge a loan rate discount has been granted to the PenFed Employee/Borrower on my Note/Agreement in accordance with PenFed's policies and procedures. I/we understand and agree I/we will be in default upon the PenFed Employee/Borrower's separation from PenFed employment either by resignation or termination, or if the loan becomes 60 days or more delinquent. In those events of default, the loan rate discount applicable to the loan will be rescinded and the loan rate will revert to the regular loan rate in effect at the time the loan was granted for the type of loan obtained for fixed-rate loans. For variable-rate loans, in those events of default, the loan rate discount applicable to the loan will be rescinded and the loan rate will revert to the regular loan rate in effect at the time the discount is rescinded. I/we further understand and agree the rate discount and the terms and

---

[6]   https://www.consumerfinance.gov/rules-policy/regulations/1026/19/#19-b-Interp-5    (*last accessed* on December 5, 2022)

PAGE | 7

conditions are made in accordance with and subject to applicable law, and PenFed's policy and procedure for Employee loan rate discounts as may be amended from time to time in PenFed's sole discretion. All other terms and conditions of the Note/Agreement remain in full force and effect.

*See* Exhibit C.

34. Putting aside Defendant's failure to disclose the variability of the loan rate in the Loan Disclosure Documents presented to Plaintiff, Defendant further fails to disclose the amount of the employee rate discount in its supplemental addendum or any specific reference within PenFed's employee policies and procedures that would purportedly apply to the mortgage loan rate discount.

35. Plaintiff is informed and believes, and thereupon alleges, that PenFed was aware that this 11th hour disclosure of a variable rate condition in Plaintiff's preferred fixed-rate mortgage was not properly disclosed to Plaintiff in PenFed's Loan Disclosure Documents.

36. On or around August 2022, Plaintiff was informed her employment with PenFed would be terminated.

37. On September 7, 2022, Plaintiff was informed the discount on her mortgage rate would be eliminated resulting in an adjustment to her mortgage rate from 2.875% to 3.15%. Exhibit D. The increase in the mortgage rate resulted in Plaintiff paying a monthly mortgage amount of $2,311 starting November 1, 2022, instead of the $2,240.42 she had been paying prior to her termination from PenFed.

38. From November 1, 2022, onward, Plaintiff has been subject to a higher mortgage interest rate and has paid a higher monthly mortgage payment because Defendant unlawfully rescinded Plaintiff's employee rate discount.

39. As a result of PenFed's violations of TILA and its implementing Regulation Z as well as its unlawful business practices discussed herein, Plaintiff and the Class suffered monetary damages from PenFed's unlawful conduct.

# CLASS DEFINITION AND ALLEGATIONS

40. Plaintiff brings this action on behalf of herself and all other similarly situated consumers pursuant to Rule 23(a), and (b)(3) of the Federal Rules of Civil Procedure.

41. Plaintiff asserts her claims for violation of TILA, and negligence on behalf of the following national class of preferred rate mortgage recipients ("Class"):

> All current and former PenFed employees whom PenFed issued a preferred rate loan secured by a residence during the applicable statute of limitations.

42. Excluded from the Class are PenFed; any affiliate, parent, or subsidiary of PenFed; any entity in which PenFed has a controlling interest; any officer, director, or employee of PenFed; any successor or assign of PenFed; any Judge to whom this case is assigned as well as his or her immediate family and staff.

43. Plaintiff reserves the right to amend or modify the Class definition in connection with a motion for class certification or with the result of discovery.

## Numerosity

44. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains at least hundreds preferred rate mortgage borrowers who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

## Predominance of Common Issues

45. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

PAGE | 9

    a. whether PenFed was required to follow the requirements of TILA as a lender who issued residential mortgage financing to borrowers;

    b. whether PenFed instituted sufficient policies and procedures to follow applicable disclosure regulations as promulgated by TILA;

    c. whether PenFed was obligated under TILA whether a mortgage loan was variable as to the type, interest rate, and conditions underlying the variability in its Loan Disclosures;

    d. whether PenFed's Loan Disclosures failed to properly disclose whether a mortgage loan was variable as to the type, interest rate, and conditions underlying the variability;

    e. whether PenFed's alleged conduct is unlawful;

    f. whether the PenFed's alleged conduct constitutes a violation of TILA;

    g. whether Plaintiff and the Class suffered actual damages as a result of PenFed's alleged unlawful conduct; and

    h. whether Plaintiff and Class members are entitled to appropriate statutory remedies, including damages and restitution.

### Typicality

46. Plaintiff's claims are typical of the claims of the members of the Class because, inter alia, all Class members were injured through the uniform misconduct described above and were subject to PenFed's failure to abide by federal regulations governing the disclosure of mortgage loan type, interest, and conditions triggering any variability as to the interest rate, amounts owed, and timelines applicable to the repayment of the mortgage loan. Plaintiff is also advancing the same claims and legal theories on behalf of herself and all members of the Class.

### Adequacy of Representation

47.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

### Superiority

48.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against PenFed.  It would thus be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court.  It presents no unusual management difficulties under the circumstances here.

49.  Plaintiff seeks statutory relief on behalf of the Class, on grounds generally applicable to the entire Class and Subclasses requiring PenFed to provide full statutory relief to Plaintiff and Class members.

50.  Unless a Class is certified, PenFed will inequitably retain monies received as a result of its conduct that were taken from Plaintiff and Class members.

**Rule 23(b)(3)**

51. The Class may be certified under Rule 23(b)(3) when questions of law or fact that are common to class members predominate over questions concerning individual members. Certification under Rule 23(b)(3) is appropriate when necessary to attain time, effort, and resource efficiencies as well as uniformity of decision applicable to similarly situated persons without sacrificing procedural fairness. Predominance is found on sufficient cohesiveness among class members with a focus on whether common questions can be resolved in a single adjudication.

52. Very few members of the Class will have the means to seek individual redress for the unlawful conduct committed against them by Defendant. Once PenFed's liability has been established as to its failure to abide by the disclosure requirements promulgated by TILA and Regulation Z to the same PenFed preferred rate loans held by all members of the Class, the Court can readily oversee the efficient administration of the Class claims.

53. Individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by the Court.

**COUNT I**
**Violation of Truth In Lending Act**
**15 U.S.C. § 1639; 21 CFR §1026.19(b)**
**(On Behalf of Plaintiff and the Class)**

54. Plaintiff repeats and re-alleges the allegations in the paragraphs above as if fully set forth herein.

55. Plaintiff brings this claim individually and on behalf of the Class.

56. As alleged herein, Plaintiff applied for and received a preferred rate mortgage loan from PenFed.

57. The preferred rate mortgage loan was presented as a fixed rate mortgage transaction as presented in the PenFed Loan Disclosures.

58. The preferred rate mortgage loans were amended to be variable-rate mortgage transactions without the requisite disclosures and applicable timing as promulgated under TILA and Regulation Z.

59. TILA and Regulation Z require creditors to disclose material terms of a variable mortgage transaction under 12 CFR §1026.19(b).

60. The Official Staff Commentary to Regulation Z, 12 CFR §1026.19(b)(2)(vii), provides pointed examples of circumstances that would trigger a rate increase in a preferred rate mortgage loan, such as the termination of employment of the borrower with a creditor.

61. PenFed violated TILA and Regulation Z by failing to disclose in its Loan Disclosure Documents that the preferred mortgage rate transactions with Plaintiff and the Class are variable-rate mortgage transactions.

62. PenFed further violated TILA and Regulation Z by failing to disclose all information required under a variable rate mortgage transaction.

63. PenFed's violations of TILA and Regulation Z harmed and continue to harm Plaintiff and the Class, including the loss of an interest rate discount within the preferred rate loan which increases the monthly mortgage payments and total cost of the mortgage to Plaintiff and the Class.

64. As a result of PenFed's violations and actions and/or failures as alleged above, Plaintiff and the Class seek all available actual and statutory damages as well as attorney fees and costs of the action under 15 U.S.C. § 1640(a)(3).

# COUNT II
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Civ. Code § 17200 *et seq.*
### (on Behalf of Plaintiff Individually)

65. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

66. The UCL prohibits any "unlawful", "fraudulent", or "unfair" business act or practice.

67. The acts and practices of PenFed as alleged above have caused Plaintiff to lose money or property as a result of PenFed's violations of the TILA as discussed herein. PenFed's acts and practices are actionable under the "unlawful" and "unfair" prongs of the UCL, as alleged with more specificity below.

68. Plaintiff may properly seek injunctive relief under the UCL as she has no adequate remedy for declaratory or injunctive relief available at law to cease or otherwise halt Defendant's ongoing and future unlawful behavior under TILA or its implementing Regulation Z.

### Unlawful Prong

69. Liability under the UCL is established through a predicate violation of a relevant statute applicable to the underlying unfair and deceptive conduct.

70. A violation of a relevant statute is an independently actionable violation of the UCL.

71. As discussed more fully above, PenFed is alleged to have violated material provisions of TILA that govern mortgage loan disclosures.

72. PenFed violated TILA by, among other things, failing to disclose in its Loan Disclosure Documents, the loan type, interest rate, and conditions that would trigger a change in the interest rate applicable to Plaintiff's mortgage.

73. PenFed's conduct is unlawful within the context of the unlawful prong of the UCL.

74. As a result of PenFed's unlawful conduct in violation of the TILA, Plaintiff was economically harmed by PenFed's violation of the unlawful prong of the UCL by virtue of Plaintiff paying a higher monthly mortgage under an unlawfully established variable interest rate.

### Unfair Prong

75. PenFed engaged in "unfair" business acts or practices by, among other things, failing to abide by TILA statutory regulations requiring PenFed to timely disclose the true costs and variability of its preferred mortgage rate product to Plaintiff.

76. In the course of conducting business, PenFed committed "unfair" business acts or practices, by which it has been unjustly enriched. Because the gravity of harm to Plaintiff and the competitive market outweighs the utility of PenFed's conduct (zero), PenFed's conduct is "unfair" having offended an established public policy in the form of TILA which sets forth requirements, regulations, and remedies for the protection of the preferred rate mortgage borrower.

77. PenFed engaged in immoral, unethical, oppressive, and unscrupulous activities that are reasonably avoidable and substantially injurious to the public at large. There were reasonably available alternatives to further PenFed's legitimate business interests other than the conduct described herein.

78. Plaintiff was economically harmed by PenFed's alleged violations of the "unfair" prong of the UCL.

79. On behalf of herself, Plaintiff seeks injunctive relief to have the Employee Addendum/Rider that PenFed inserted and applied to Plaintiff's mortgage struck as unlawful and unfair under the UCL.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A. Certification of this case as a class action on behalf of the Class and certification of Plaintiff as an adequate Class Representative and her counsel as Class Counsel for the Class;

B. Issuance of a Court order finding PenFed in violation of the TILA as to Plaintiff and the Class;

C. Issuance of a Court order finding PenFed in violation of the UCL as to Plaintiff;

D. Issuance of a Court order awarding financial and statutory damages to Plaintiff and the other members of the Class, including any applicable interest as permitted under law;

E. Issuance of a Court order awarding appropriate equitable relief to Plaintiff, including declaratory and injunctive relief compelling PenFed to reinstate her unlawfully adjusted preferred rate mortgage product to the rate prior to the unlawful adjustment;

F. An award of costs and reasonable attorneys' fees; and

G. Such other and further relief as this Court finds necessary and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable as permitted under applicable law.

Dated: December 5, 2022

**MANFRED, APC**

s/ Manfred P. Muecke
Manfred P. Muecke (SBN: 222893)
mmuecke@manfredapc.com
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 550-4005
Fax: (619) 550-4006

**Law Offices of Lauren Chaikin**
Lauren N. Chaikin (SBN: 297105)
lauren@chaikinlegal.com
4275 Executive Square, Suite 200
La Jolla, CA 92037
Telephone: (858) 366-7768
Fax: (858) 300-5261

*Attorneys for Plaintiff*